IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08–cv–00487–WYD–KMT

DERRICK L. ARANDA, #99396,

    Plaintiff,

v.

L.T. MCCORMAC,
L.T. STRODE,
SGT. P. ADERSON, and
LENORD VIGIL,

    Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

    This case involves claims that Defendants violated Plaintiff's Eighth Amendment rights. This matter is before the court on Defendants' "Motion to Dismiss" (Doc. No. 31, filed September 22, 2008). Jurisdiction is premised upon 42 U.S.C. § 1983 (2008).

## STATEMENT OF THE CASE

    The following facts are taken from Plaintiff's original Complaint, amended Prisoner Complaint, and the parties' submissions with respect to this Recommendation. Plaintiff currently is an inmate at the Colorado State Penitentiary ("CSP"), Colorado Department of Corrections ("CDOC"). (Am. Prisoner Compl. at 2 [hereinafter "Am. Compl."] [filed June 11, 2008].) Plaintiff names as defendants Lieutenant M. McCormac, Lieutenant Strode, Sergeant P.

Aderson[1], and Lenord Vigil, all employees of the CDOC. (*Id.* at 1–3.) Plaintiff's Amended Complaint is not a model of clarity. From what this court can gather, at some point Plaintiff was an inmate in the CDOC and granted parole but was incarcerated again due to a revocation complaint. (Compl. at 16 [hereinafter "Doc. No. 3"].) It appears Plaintiff was charged and pled guilty to one charge of "Robbery/Agg-Menace victim w/deadly weapon" that occurred on June 13, 2005. (*Id.* at 15.) On March 17, 2006, Plaintiff was sentenced to twenty-five years in the CDOC. (*Id.*) On July 12, 2006, the court recommended placement in an out-of-state facility because of danger to him as elaborated *infra*. (*Id.*) Plaintiff states he was placed at the Buena Vista Correctional Facility ("BVCF") on August 8, 2006. (Compl. at 5.)

It appears that from the time of Plaintiff's arrest in 2005 on robbery charges until approximately July 2007, Plaintiff cooperated with the Adams County Sheriff's Office in providing information on attempted robbery at a motel in Adams County. (Doc. No. 3 at 30.) With the information provided by Plaintiff, two GKI (Gallant Knights Insane) gang members were arrested for the attempted murder and robbery of the hotel clerk. (*Id.*) Plaintiff testified in the criminal trials against the two known gang members in approximately mid- to late-2007. (*Id.* at 32; Am. Compl. at 3.)

In spite of the court's recommendation and the known danger to Plaintiff, upon his arrival at BVCF, obviously an in-state facility, he was placed in the Admission and Orientation ("A/O") Unit before being allowed into a general population unit. (Doc. No. 3 at 24.) On August 14,

---

[1]Plaintiff misspells Defendant Anderson's name as "Aderson." The court hereinafter will refer to this defendant with the correct spelling of "Anderson."

2006, six days after his arrival at BVCF and while Plaintiff was still in the A/O Unit, Plaintiff alleges he was assaulted by his cellmate, a GKI gang member. (Am. Compl. at 4–7; Doc. No. 3 at 24.) Plaintiff states he suffered injuries that needed medical attention. (*Id.* at 4.) Plaintiff contends that Defendants "have a duty to review records in their custody when determining how to house a prisoner." (*Id.*) He alleges the Defendants failed to look into ways to protect him and that their failure constitutes a violation of his Eighth and Fourteenth Amendment rights. (*Id.*) He also alleges Defendants have "failed to supervise." (*Id.*) Plaintiff seeks compensatory damages, punitive damages, injunctive relief, and declaratory relief. (*Id.* at 11.)

Defendants move to dismiss Plaintiff's Amended Complaint on the bases that (1) Plaintiff has failed to state a claim upon which relief can be granted; and (2) Defendants are entitled to qualified immunity. (Mot. to Dismiss [hereinafter "Mot."] [filed September 22, 2008].)

## PROCEDURAL HISTORY

Plaintiff filed his original complaint on March 10, 2008. (Doc. No. 3.) On May 13, 2008, Magistrate Judge Boyd N. Boland ordered the plaintiff to file a legible, amended complaint that complied with the pleading requirements of Rule 8 and that asserted each defendant's personal participation in the asserted Eighth Amendment violations. (Doc. No. 9.) Plaintiff filed his Amended Prisoner Complaint on June 11, 2008. (Am. Compl.) Defendants filed their motion to dismiss on February 2, 2009. (Mot.) Plaintiff filed his a letter/response on September 30, 2008. (Resp.) Defendants did not file a reply. This motion is ripe for review and recommendation.

## STANDARD OF REVIEW

*1.*     **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

*3.*     *Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that

the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

When ruling on a defendant's motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, —, 127 S. Ct. 1955, 1965 (2007) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n.1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Further, the court is to make all reasonable inferences in the plaintiff's favor. *Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1204 (10th Cir. 2002). In doing so, the Court distinguishes well-pleaded facts from conclusory allegations. *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002) (citations omitted).

To state a claim, a plaintiff's complaint must "show[ ] that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp.*, 550 U.S. 544, —, 127 S. Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The plaintiff must allege enough factual matter, taken as true, to make his "claim to relief . . . plausible on its face." 550 U.S. 544, —, 127 S. Ct. 1955, 1974 (2007); *Van Zanen v. Qwest Wireless, L.L.C.*, 522 F.3d 1127, 1129–30 (10th Cir. 2008). This is not to say that the factual allegations must themselves be plausible; after all, they are assumed to be true. It is just to say that relief must follow from the facts alleged. *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). If a complaint explicitly alleges every fact

necessary to win at trial, it has necessarily satisfied this requirement. *Bryson v. Gonzales,* 534 F.3d 1282, 1286 (10th Cir. 2008). The issue in reviewing the sufficiency of a plaintiff's complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims. *See Scheuer*, 416 U.S. at 236.

## ANALYSIS

### 1. *Eighth Amendment Claim*

The Eighth Amendment imposes on prison officials a duty to protect prisoners from violence at the hands of other inmates. *See Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981). Prison officials are not, however, expected to prevent all inmate-on-inmate violence. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Berry v. City of Muskogee*, 900 F.2d 1489, 1494–95 (10th Cir. 1990). The failure of a prison official to protect an inmate from attacks by other inmates rises to the level of an Eighth Amendment violation only if the evidence shows the defendants acted with "wanton or obdurate disregard for or deliberate indifference to" the protection of prisoners' lives. *Harris v. Maynard*, 843 F.2d 414, 416 (10th Cir. 1988); *Northington v. Jackson*, 973 F.2d 1518, 1525 (10th Cir. 1992). The Supreme Court has expressly rejected the suggestion that a prison official violates the Eighth Amendment when he might have known or should have known of a risk of harm. *See Farmer*, 511 U.S. at 837–38. *See Gonzales v. Martinez*, 403 F.3d 1179, 1186 (10th Cir. 2005).

The test for deliberate indifference claims under the Eighth Amendment is well established in the Tenth Circuit and has "both an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component of the test

is met if the harm suffered is "sufficiently serious" to implicate the Cruel and Unusual Punishment Clause. 511 U.S. at 834. The subjective component "is met if a prison official 'knows of and disregards an excessive risk to inmate health or safety.'" *Sealock*, 218 F.3d at 1209 (quoting *Farmer*, 511 U.S. at 837).

### A.     *Seriousness of Harm*

The objective component of Plaintiff's deliberate indifference claim is met for purposes of a motion to dismiss. According to his amended complaint, Plaintiff was assaulted by his cellmate and suffered injuries requiring medical attention. The medical records attached to Plaintiff's original complaint show that Plaintiff suffered injuries to his face and head as the result of an assault. (Doc. No. 3 at 26–27, 36.) Plaintiff's alleged injuries are "plausibly 'sufficiently serious' to constitute a deprivation of constitutional dimension," *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006), cert. denied, 549 U.S. 856 (2006), and to meet the purpose of limiting claims "to significant, as opposed to trivial, suffering." *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005).

### B.     *Knowledge of Risk*

Whether Plaintiff has met the subjective component is a closer question. The subjective component of a deliberate indifference claim requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Farmer*, 511 U.S. at 838. It is not enough to allege that prison officials failed "to alleviate a significant risk that [they] should have perceived but did not." *Id.* To show "the requisite deliberate indifference," [the plaintiff] "must establish that defendant(s) knew he faced a substantial risk of

harm and disregarded that risk, 'by failing to take reasonable measures to abate it.'" *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Farmer*, 511 U.S. at 847).

> The subjective component of the deliberate indifference test requires that, before liability can be imposed, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998).

*Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003).

The Supreme Court has found a plaintiff may prove that the defendants had actual knowledge of a substantial risk "in the usual ways." *See Farmer*, 511 U.S. at 842. In other words, a factfinder may infer actual knowledge through circumstantial evidence, or "may conclude a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* Moreover, regardless of how prison officials become subjectively aware of a substantial risk of serious harm to an inmate, the Eighth Amendment requires them to respond reasonably. *Howard v. Waide*, 524 F.3d 1227, 1237 (10th Cir. 2008).

Plaintiff asserts that Defendant Vigil, who Plaintiff alleges is in charge of offender placement, was made aware of his "custody issues: by (1) the district attorney's office, (2) the court's recommendation to place Plaintiff in an out-of-state facility, (3) letters from law enforcement, and (4) telephone calls from Plaintiff's parole officer. (Am. Compl. at 6.) Plaintiff states that Defendant Vigil, despite being aware of the danger associated with housing him with GKI gang members, sent Plaintiff to BVCF, which is known for its violence and gang activity. (*Id.*) Plaintiff alleges Defendant Vigil "failed to fully investigate the situation of how serious

[Plaintiff's] custody issues were from the G.K.I. members" and "failed to respond to information about a danger to [Plaintiff]." (*Id.*)

Plaintiff alleges he spoke directly to Defendant Anderson on August 8, 2006, "and explained [his] situation." (Am. Compl. at 6.) Plaintiff further alleges Defendant Anderson talked to Defendant McCormac, and both defendants decided Plaintiff should go through the A/O Unit before being allowed into the general population unit. (*Id.*) Plaintiff asserts he told the defendants that he could not go into the general population or A/O because each area housed GKI members, but Plaintiff was told he had to go into A/O because there was no one on Plaintiff's separation list housed there who would be a threat to Plaintiff. (*Id.* at 9.) Plaintiff states Defendants Anderson and McCormac "were very aware of the situation and [k]new the circumstance was made clear that an assault was imminent" but that they failed to take steps to prevent it. (*Id.* at 7.)

Plaintiff asserts he personally told Defendant Strode that he had issues with all GKI members. (*Id.* at 7.) Plaintiff alleges Defendant Strode knew Plaintiff from Limon Correctional Facility and knew Plaintiff "had issues in Limon in 2001 with members of G.K.I. and was moved from Limon in 2001 cause of custody issues and threats made by the G.K.I. members." (*Id.*) Plaintiff states Defendant Strode asked Plaintiff if he was going to be all right in A/O because there were a few GKI members there. (*Id.*) Plaintiff contends he told Defendant Strode on August 10, 2006, that he did not feel safe and that Defendants Anderson and McCormac knew of the issues. (*Id.*) Plaintiff alleges, "[A]t that point, Lt. Strode moved [Plaintiff] . . . to be housed with another G.K.I. member." (*Id.*) Plaintiff contends that Defendant Strode, who knew of

9

Plaintiff's history with GKI gang members, was careless to move him to a cell with a GKI member. (*Id.* at 8.)

It is clear to this court that the CDOC knew of the substantial risk of harm to Plaintiff as early as February 20, 2006, six months before Plaintiff was placed in the CDOC following his sentencing on the robbery charges, when the Team Leader for the South Metro Regional Parole Office wrote a letter to Plaintiff stating she "[had] been in contact with the appropriate person in DOC regarding your question of a transfer out of state . . . ." and listing issues the CDOC would have to consider, including (1) the nature of the threats to Plaintiff and why he is threatened; (2) who the threats are from; and (3) the verifiable information regarding the threats. (*Id.* at 16.) In addition, Defendant McCormac, in his response to Plaintiff's Step 1 Grievance, admitted that Plaintiff, upon being received at BVCF/Intake on August 8, 2006, had spoken to a case manager and Defendant Anderson about GKI custody issues. (*Id.* at 24.) Defendant McCormac stated that the "STG affiliation of every offender is not commonly known by every staff member." Defendant McCormac also points out that "there is probably not a facility in the CDOC that does not have identified GKI's in their population." (*Id.*) Although Defendant McCormac stated that "[a] check of [P]laintiff's custody issues was conducted and no specific offenders at BVCF were listed on [his] separation list" (*id.*), there is no indication Defendants performed any investigation to determine whether Plaintiff's cellmate was a GKI member.

Taking all of Plaintiff's allegations as true, this court finds Plaintiff has alleged enough factual matter to make his claim that Defendants failed to fully investigate the situation of how

10

Case 1:08-cv-00487-WJM-KMT   Document 48   Filed 05/26/09   USDC Colorado   Page 11 of 13

serious his custody issues were and failed to respond to information about a danger to Plaintiff plausible on its face. 550 U.S. 544, —, 127 S. Ct. at 1974.

### 2. *Qualified Immunity*

The defendants also contend that they are nonetheless entitled to qualified immunity because the constitutional right that Plaintiff invokes has not been clearly established by prior controlling law in this jurisdiction. The Supreme Court and the Tenth Circuit have repeatedly and unequivocally established an inmate's Eighth Amendment right to be protected from substantial risks of assault by fellow prisoners. *See, e.g., Farmer*, 511 U.S. at 833–34; *Ramos*, 639 F.2d at 572 ("[A]n inmate does have a right to be reasonably protected from constant threats of violence and sexual assaults from other inmates."). Accordingly, these defendants are not entitled to qualified immunity.

WHEREFORE, for the foregoing reasons, the court respectfully

**RECOMMENDS** that Defendants' "Motion to Dismiss" (Doc. No. 31) be DENIED.

## ADVISEMENT TO THE PARTIES

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the

district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 26th day of May, 2009.

**BY THE COURT:**

_____
Kathleen M. Tafoya
United States Magistrate Judge