IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08–cv–00487–WYD–KMT


DERRICK L. ARANDA, #99396,

      Plaintiff,

v.

L.T. MCCORMAC,
L.T. STRODE,
SGT. P. ADERSON, and
LENORD VIGIL,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**Kathleen M. Tafoya**
**United States Magistrate Judge**

This case comes before the court on Plaintiff's "Cause for Preliminary Injunction" (Doc.

No. 57) and "Declaration" in support of the motion (Doc. No. 58) filed June 25, 2009.

Defendants filed their response on July 21, 2009 (Doc. No. 65), and Plaintiff filed his reply on

July 28, 2009 (Doc. No. 69.)  This court held an evidentiary hearing on the motion on September

18, 2009.  This matter is ripe for review and recommendation.

*Background*

The following facts are taken from Plaintiff's original Complaint, amended Prisoner

Complaint, and the parties' submissions with respect to this Recommendation.  Plaintiff

currently is an inmate at the Colorado State Penitentiary ("CSP"), Colorado Department of

Corrections ("CDOC").  (Am. Prisoner Compl. at 2 [hereinafter "Am. Compl."] [filed June 11,

2008].)  Plaintiff names as defendants Lieutenant M. McCormac, Lieutenant Strode, Sergeant P.

Aderson, and Lenord Vigil[1], all employees of the CDOC.  (*Id.* at 1–3.)  At some point Plaintiff

was an inmate in the CDOC and granted parole but was incarcerated again due to a revocation

complaint.  (Compl. at 16 [hereinafter "Doc. No. 3"].)  It appears Plaintiff was charged and pled

guilty to one charge of "Robbery/Agg-Menace victim w/deadly weapon" that occurred on June

13, 2005.  (*Id.* at 15.)  On March 17, 2006, Plaintiff was sentenced to twenty-five years in the

CDOC.  (*Id.*)  On July 12, 2006, the state sentencing court recommended placement in an out-of-

state facility because of danger to him as elaborated *infra*.  (*Id.*)  Plaintiff states he was placed at

the Buena Vista Correctional Facility ("BVCF") on August 8, 2006.  (Compl. at 5.)

It appears that from the time of Plaintiff's arrest in 2005 on robbery charges until

approximately July 2007, Plaintiff cooperated with the Adams County Sheriff's Office in

providing information on attempted robbery at a motel in Adams County.  (Doc. No. 3 at 30.)

With the information provided by Plaintiff, two GKI (Gallant Knights Insane) gang members

were arrested for the attempted murder and robbery of the hotel clerk.  (*Id.*)  Plaintiff testified in

the criminal trials against the two known gang members in approximately mid- to late-2007.  (*Id.*

at 32; Am. Compl. at 3.)

---

[1]Plaintiff misspells Defendant Anderson's name as "Aderson" and Defendant Leonard Vigil's name as "Lenord Vigil."  The court hereinafter will refer to this defendant with the correct spelling of "Anderson" and "Leonard Vigil."

In spite of the state sentencing court's recommendation and the known danger to

Plaintiff, upon his arrival at BVCF, obviously an in-state facility, he was placed in the

Admission and Orientation ("A/O") Unit before being allowed into a general population unit.

(Doc. No. 3 at 24.)  On August 14, 2006, six days after his arrival at BVCF and while Plaintiff

was still in the A/O Unit, it is undisputed that Plaintiff was assaulted by his cellmate, a GKI gang

member.  (Am. Compl. at 4–7; Doc. No. 3 at 24.)  Plaintiff states he suffered injuries that needed

medical attention.  (*Id.* at 4.) Plaintiff contends that Defendants "have a duty to review records in

their custody when determining how to house a prisoner."  (*Id.*)  He alleges the Defendants failed

to look into ways to protect him and that their failure constitutes a violation of his Eighth and

Fourteenth Amendment rights.  (*Id.*)  He also alleges Defendants have "failed to supervise."

(*Id.*)

### *Motion for Injunction*

Plaintiff requests injunctive relief pursuant to Fed. R. Civ. P. 65(b).  Specifically, in his

motion Plaintiff originally sought an order enjoining the defendants from housing Plaintiff with

known GKI members and from putting Plaintiff in a situation that might cause him injury at the

hands of GKI members.  (Doc. No. 57.)

At some point after Plaintiff's placement at BVCF, Plaintiff was transferred to San

Carlos Correctional Facility and was placed in administrative segregation for admitting he had

sexual relations with a DOC staff member.  (Doc. No. 71 at 20.)  According to Defendant

Leonard Vigil, who testified at the preliminary injunction hearing, Plaintiff had been accepted

for placement at an out-of-state facility, and Plaintiff would have been transferred in a matter of

days; however, upon Plaintiff's placement into administrative segregation, Plaintiff was taken off

of the list for transfer to an out-of-state facility.  Defendant Vigil testified that it is difficult to

place an inmate in another state if he is in administrative segregation because the interstate

transfer is a trade-off between two state facilities, and the other state has to be willing to accept

the offender.[2]

On January 22, 2008, Plaintiff was transferred to the Colorado State Penitentiary ("CSP")

on Removal from Population ("RFP") status.  (*Id.*)  Plaintiff was transferred to Centennial

Correctional Facility ("CCF") on February 4, 2009, and placed in maximum administrative

segregation.  (Doc. 65-4, ¶¶ 11, 16.)  On February 19, 2009, Plaintiff was transferred to another

pod at CCF to allow his participation in the Progressive Reintegration Opportunity Unit ("Pro

Unit") program, a transition program designed to prepare offenders coming from administrative

segregation at CSP for placement in the general population.  (*Id.*, ¶¶ 14, 19.)  Plaintiff was

transferred back to maximum administrative segregation on April 21, 2009, as a result of a

disciplinary conviction.  (*Id.*, ¶¶ 20.)  On May 4, 2009, Plaintiff was placed in Pod E at CCF,

awaiting an opening in the Pro Unit program.  (*Id.*, ¶ 21.)

Witness James Olson, a DOC case manager supervisor, testified at the preliminary

injunction hearing that the Pro Unit, Level IV, has four phases.  Mr. Olson stated that it takes an

inmate approximately seven months to progress from level IV, phase 1 to Level V.  Mr. Olson

---

[2]At the preliminary injunction hearing, Witness James Olson testified that Plaintiff, as of July 24, 2009, has an active referral for out-of-state placement, that this placement is contingent on an out-of-state facility accepting him, and that his placement in the other state is currently under consideration by that state.

explained that at Level IV, phase 3, offenders are allowed to go to the recreational yard and

common areas and to have contact with other offenders.  Mr. Olson stated that once an offender

completes the Pro Unit, a classification review is conducted and offenders generally are

transferred out of CCF, although on rare occasions it is recommended that an offender be held in

a permanent party pod at CCF.  At the hearing Plaintiff changed the nature of the injunctive

relief sought, and now requests placement in permanent party status at CCF upon his transfer out

of the Pro Unit while he awaits out-of-state placement.

>To obtain a preliminary injunction, a plaintiff must show:
>
>(1) a substantial likelihood of success on the merits; (2) irreparable harm to the
>movant if the injunction is denied; (3) [that] the threatened injury outweighs the
>harm that the preliminary injunction may cause the opposing party; and (4) [that]
>the injunction, if issued, will not adversely affect the public interest.

*Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).  Mandatory

injunctions and injunctions that would disturb, rather than preserve the status quo, are

"specifically disfavored"; a party seeking such an injunction bears a "heightened burden" to

show that "the exigencies of the case support the granting of a remedy that is extraordinary even

in the normal course."  *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d

973, 975 (10th Cir. 2004) (*en banc*), aff'd, 546 U.S. 418 (2006).  "Because a preliminary

injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."

*Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003).

Plaintiff seeks a preliminary injunction requiring Defendant to transfer him to another

correctional facility or to house him in permanent party placement at CCF.  The relief sought

would alter the status quo rather than preserve it.  For these reasons, the injunctive relief sought

by Plaintiff "constitutes a specifically disfavored injunction" that "must be more closely

scrutinized."  *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1259,

1261 (10th Cir. 2004).

First, Plaintiff must show that he will suffer irreparable injury if his request for

preliminary injunction is denied.  "To constitute irreparable harm, an injury must be certain,

great, actual and not theoretical."  *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir.

2003) (internal quotation marks omitted).  "'[B]ecause a showing of probable irreparable harm is

the single most important prerequisite for the issuance of a preliminary injunction, the moving

party must first demonstrate that such injury is likely before the other requirements for the

issuance of an injunction will be considered.'"  *Dominion Video Satellite, Inc*, 356 F.3d at 1260

(quoting *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990)).

Plaintiff asserts that if he is housed with other GKI members he will face irreparable

harm.  Defendants argue that Plaintiff has failed to show he faces immediate and irreparable

harm, and that any possible harm Plaintiff faces is speculative because of the restrictive setting

of the Pro Unit and CCF general housing.  This court disagrees.  Plaintiff has been assaulted at

least once by a GKI member.  At the preliminary injunction hearing, Lieutenant Chris Barr

testified that he is aware Plaintiff is on a "green light list" — essentially a GKI order to all of its

members to do a "hit" on Plaintiff.  The statistics given at the preliminary injunction hearing

reveal that GKI, a local Colorado gang, are very numerous within the CDOC.  Defendants do not

dispute that Plaintiff, if he is housed with or allowed in common areas with other GKI members,

6

would be in danger.  Defendants assert, however, that they are able to prevent Plaintiff from

coming into contact with other GKI members.  The court disagrees.  Plaintiff asserts, and the

court finds, that the CDOC, although they undoubtedly will attempt to prevent this contact, have

not done so in the past and likely will be unable to do so in the future when Plaintiff progresses

out of the Pro Unit program and into the general population.  The court finds this factor weighs

heavily in favor of the plaintiff.

Next, Plaintiff must show that he has a substantial likelihood of success on the merits of

his claim.  Plaintiff's Complaint alleges, *inter alia*, that CDOC officials have failed to protect

him from other inmates in violation of his Eighth Amendment right to be free from cruel and

unusual punishment.  In order for Plaintiff to succeed on a claim for failure to protect, he must

show that he is incarcerated under conditions posing a substantial risk of serious harm (the

objective component), and that the defendants acted with "deliberate indifference" to that danger

(the subjective component).  *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994); *Verdecia v.*

*Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003).  "[A]n Eighth Amendment claim could be made

out on evidence showing that officials transferred a protective custody inmate to a facility

knowing that the inmate could not be protected there."  *Chavez v. Perry*, 142 Fed. App'x 325,

333 (10th Cir. July 13, 2005).  Defendants' motion to dismiss Plaintiff's claims was denied by

Chief District Judge Wiley Y. Daniel on June 18, 2009.  (Doc. No. 54.)  Although the

circumstances under which Plaintiff is currently incarcerated do not give rise to a substantial risk

of serious harm or place him in imminent danger of serious harm, as noted above, those

conditions may change at any time.  If Plaintiff is in contact with or in close physical proximity

to other GKI inmates, there is a risk that Plaintiff may be harmed.  However, prison is an

inherently dangerous place.  There is no evidence that Defendants placed Plaintiff in a cell

knowing that he could not be protected or that the defendants deliberately placed him in harm's

way.  The evidence presented at the preliminary injunction hearing reveals that since the initial

assault, Defendants have done everything they can to assure that Plaintiff is not housed with any

GKI members and that they have accommodated Plaintiff's requests to be moved away from

other inmates when the Plaintiff has notified defendants of a potential danger or threat.  The

court finds this factor does not weigh in favor of either Plaintiff or the Defendants.

Plaintiff must also show that any threatened injury to him does not outweigh the injury to

the Defendants under the preliminary injunction.  Defendants argue that Plaintiff fails to provide

any support whatsoever that the alleged harm to him in his current facility outweighs the

potential damage the injunction may cause Defendants or CDOC.  Inmate placement decisions

are made for numerous reasons including security, protection of inmates, provision of medical

and mental health services, education or vocational program access, and custody (separation)

issues.  (*See* Doc. No. 65, Ex. D, AR 600-1 at 7.)  Defendants assert that ensuring Plaintiff is not

housed with any gang member would be nearly impossible, as of the approximately 336

offenders housed at CCF, approximately 256 of those offenders are gang members, and of the

approximately 756 offenders housed at CSP, approximately 516 of those offenders are gang

members.  (*Id.* at 7, Ex. C, ¶ 5.)  The court agrees with the defendants that Plaintiff has failed to

articulate how his request not to house him with any gang members could be carried out with

minimal impact on Defendants' day-to-day decisions.  The court also does not understand how

housing Plaintiff in permanent party placement at CCF would prevent him from injury at the hands of other gang members also placed in population at CCF.  Furthermore, interference with Defendants' placement decisions would significantly undermine the CDOC's discretion and autonomy.  *See Taylor v. Freeman*, 34 F.3d 266, 269–70 (4th Cir. 1994).  The Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control, and maintenance by the sovereign states of their penal systems.  It is a delicate role assigned to the federal courts to display that restraint so necessary 'in the maintenance of proper federal-state relations.'"  *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1997) (citation omitted).  As such, "intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts . . . . [This] is especially true where mandatory injunctive relief is sought and only preliminary findings as to the plaintiff's likelihood of success on the merits have been made."  *Taylor*, 34 F.3d at 269 (citations omitted).  This factor weighs heavily in favor of the defendants.

Finally, Plaintiff must show that the requested injunction is not adverse to the public interest.  Defendants argue that the CDOC has an interest in ensuring that its prisons remain as safe as possible for staff as well as often dangerous inmates, and also that inmates are provided with necessary medical care and programmatic access. (Doc. No. 65 at 8.)  Indeed, the public has an interest in ensuring that its prisons remain safe for all inmates and staff.  Defendants contend that Placement decisions are made by the office of Offender Services after considering numerous factors such as provision of medical and mental health services, providing appropriate programmatic services, age, security issues and custody issues an offender may have with other

inmates, and that the CDOC should not be precluded from making these decisions based upon review of these and additional inmate specific information it has in its files.  (*Id.*)  Defendants aver that precluding the CDOC from making these types of informed decisions is adverse to the public interest.  (*Id.*)  The court agrees and finds this factor weighs in favor of the defendants.

Accordingly, as Plaintiff has failed to satisfy the four prerequisites to obtaining a preliminary injunction, this court respectfully

RECOMMENDS that Plaintiff's "Cause for Preliminary Injunction" (Doc. No. 57) be DENIED.

## ADVISEMENT TO THE PARTIES

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the

10

magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's

decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection

does not preclude application of the "firm waiver rule");  *One Parcel of Real Property*, 73 F.3d

at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be

both timely and specific to preserve an issue for *de novo* review by the District Court or for

appellate review);  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining*

*Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the

Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the

ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file

objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see,*

*Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not

apply when the interests of justice require review).

Dated this 1st day of October, 2009.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge