IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 08-cv-00487-WYD-KMT

DERRICK L. ARANDA,

    Plaintiff,

v.

L.T. McCORMAC,
L.T. STRODE,
SGT. P. ADERSON, and
LENORD VIGIL,

    Defendants.

---

**ORDER AFFIRMING AND ADOPTING
UNITED STATES MAGISTRATE JUDGE'S RECOMMENDATION**
---

I.    INTRODUCTION

This matter is before the Court on the Defendants' Motion for Summary Judgment, filed December 21, 2009 [ECF No. 107], and Plaintiff's motion styled "Dispositive Motion" filed January 6, 2010 [ECF No. 114]. The motions were referred to Magistrate Judge Tafoya for a recommendation and Magistrate Judge Tafoya issued a Recommendation of United States Magistrate Judge on August 18, 2010 [ECF No. 164], which is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1), FED. R. CIV. P. 72(b), D.C.COLO.LCivR. 72.1. Magistrate Judge Tafoya recommends therein that the motion for summary judgment be granted in part and denied in part, and that Plaintiff's dispositive motion be denied. *See* Recommendation at 32.

Specifically, Magistrate Judge Tafoya recommended that Plaintiff's claims for declaratory relief and injunctive relief be dismissed as moot, and that to the extent Plaintiff asserts any official-capacity claims for monetary relief against Defendants, those claims are barred by the Eleventh Amendment. *See* Recommendation at 6-9. Magistrate Judge Tafoya further recommended that summary judgment be granted in favor of Defendant Anderson based on Plaintiff's failure to present evidence demonstrating he personally participated in any of the acts forming the basis of his claims. *See* Recommendation at 13-16. As to Defendants Vigil, McCormac and Strode, Magistrate Judge Tafoya found that Plaintiff sufficiently raised disputed issues of material fact which preclude granting summary judgment in favor of the Defendants for lack of personal participation. *See* Recommendation at 10-13; 16-19. Finally, Magistrate Judge Tafoya found that Plaintiff had created a genuine issue of material fact as to whether Defendants acted reasonably, as required by the Eighth Amendment, and concluded that Defendants McCormac, Strode and Vigil were not entitled to qualified immunity. *See* Recommendation at 19-32. Thus, Magistrate Judge Tafoya recommended that summary judgment be denied as to Defendants Vigil, McCormac and Strode, and that Plaintiff be permitted to proceed with his Eighth Amendment claims against these Defendants for monetary relief in their individual capacities. *See* Recommendation at 32.

II.     ANALYSIS OF OBJECTION

On September 1, 2010, Defendants filed a timely Objection, which necessitates a *de novo* determination as to those specified proposed findings or recommendations to

which objection is made since the nature of the matter is dispositive. FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b)(1). Defendants object only to the portion of the Recommendation recommending denial of summary judgment as to Defendant Vigil. Defendants claim that Plaintiff has failed to sufficiently allege that Defendant Vigil personally participated in any of the acts forming the basis for Plaintiff's Eighth Amendment claim, and that Defendant Vigil is entitled to qualified immunity.

A. Background

At the time Plaintiff filed his Complaint in this case he was an inmate in the Colorado Department of Corrections ("CDOC"). Defendants are current and former CDOC employees. Plaintiff brings an Eighth Amendment claim against all Defendants pursuant to 42 U.S.C. § 1983, asserting that Defendants failed to protect him from an assault by another inmate that occurred at the Buena Vista Correctional Facility on August 14, 2006.

On March 17, 2006, Plaintiff was sentenced to twenty-five years in the CDOC after he plead guilty to one count of "Robbery/Aggravated Menace victim w/deadly weapon." From the time of Plaintiff's arrest in 2005 on robbery charges, until approximately July 2007, he cooperated with the Adams County Sheriff's Office on another case. The information provided by Plaintiff led to the arrest of two GKI (Gallant Knights Insane) gang members for attempted murder and robbery. Plaintiff testified in the criminal trials of these two individuals sometime in 2007. On July 12, 2006, the state sentencing court recommended that Plaintiff be placed in an out-of-state facility because of the known danger to Plaintiff from members of the GKI. Despite this

recommendation, Plaintiff was placed at the Buena Vista Correctional Facility (BVCF) on August 8, 2006. Plaintiff was assaulted by his cellmate, a GKI member, on August 14, 2006, six days after his arrival at BVCF.

Plaintiff alleges that Defendant Vigil is in charge of offender placement, and was made aware of his "custody issues" by (1) the district attorney's office; (2) the court's recommendation to place Plaintiff in an out-of-state facility; (3) letters from law enforcement; and (4) telephone calls from Plaintiff's parole officer. According to Plaintiff, Defendant Vigil sent him to BVCF, despite being aware of the danger associated with housing him with GKI gang members. Plaintiff supported these claims with declarations of his mother, Laura Aranda, and his grandmother, Dorothy Rivera. Plaintiff contends that on August 8, 2006, the day he was placed at BVCF, he contacted his mother, gave her Defendant Vigil's telephone number, and asked her to call Defendant Vigil to advise him that Plaintiff was not safe at BVCF and that Plaintiff was concerned that GKI members were going to "get him." Ms. Aranda states that on August 9, 2006, she called Leonard Vigil between 8:30 a.m. and 9:00 a.m. and that Mr. Vigil told her that he would look into Plaintiff's "situation," and that Plaintiff's "situation" was being looked at. Ms. Rivera states that she heard Ms. Aranda place this telephone call.

Defendant Vigil filed a Declaration in connection with the motion for summary judgment in which he states that at the time of the incidents alleged in the Complaint, he was employed by the CDOC as a Case Manager II, and worked out of Offender Services at CDOC headquarters. Within this position, Defendant Vigil was a member of

the High Security Management Unit/Offender Services CDOC Headquarters responsible for the classification of high security and segregated inmates and Security Threat Groups. In addition, he was the facility liaison for the Colorado State Penitentiary and the Centennial Correctional Facility as well as all inmates classified in administrative segregation. Defendant Vigil contends that he did not issue the Executive Assignment Order that authorized Plaintiff's transfer to BVCF, that he did not have any knowledge of Plaintiff or his custody issues prior to January 30, 2008, when he responded to three letters from Plaintiff in which he requested to be considered for an interstate transfer through the interstate compact. Defendant Vigil further states that prior to 2008, he did not have any contact with other law enforcement agencies regarding the circumstances surrounding Plaintiff and his custody issues. Finally, Defendant Vigil contends that Plaintiff may be confusing him with his supervisor, Daryl Vigil.

In Response, Plaintiff disputed Defendant Vigil's contention that he first became aware of Plaintiff's custody issues in January 2008. Plaintiff contends that Defendant Vigil first obtained knowledge of his custody issues on August 9, 2006 "when [Plaintiff's mother] called him to notify him of [Plaintiff's] situation in BVCF." In addition, Plaintiff contends that Defendant Vigil became aware of his custody issues in "grievances" addressed to him at Offender Services in 2007. Plaintiff contends that even though Defendant Vigil many not have issued the Executive Assignment Order authorizing his transfer to BVCF, he "was a member of (STG) security threat groups at offender services CDOC headquarters his responsibility was class [sic] facilitator. [Plaintiff's]

issues are STG related and would be seen threw Leonard Vigil." Defendant Vigil does not respond to these allegations in his reply.

### B. Personal Participation

In his Objection, Defendant Vigil contends that evening assuming, *arguendo*, that he received a phone call from Defendant's mother on August 9, 2006, this call is insufficient to establish personal participation in the alleged constitutional violations.

Personal participation is an essential showing in a § 1983 action. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1986); *Massey v. Wilson*, 484 F. Supp. 1332, 1333 (D. Colo. 1980). A defendant cannot be held liable by virtue of his or her supervisory position on a theory of respondeat superior. *Ruark v. Solano*, 928 F.2d 947 (10th Cir. 1991); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986); *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983).

It is undisputed that the state sentencing court recommended that Plaintiff be placed in an out-of-state facility because of the known danger to Plaintiff from members of the GKI. It is not clear from the record how this recommendation was processed. Plaintiff alleges that Defendant Vigil is in charge of offender placement, and was made aware of his "custody issues" by (1) the district attorney's office; (2) the court's recommendation to place Plaintiff in an out-of-state facility; (3) letters from law enforcement; and (4) telephone calls from Plaintiff's parole officer. In the motion for summary judgment Defendant Vigil admits that he worked out of Offender Services at CDOC headquarters, and was responsible for the classification of high security and administrative segregated inmates and Security Threat Groups, and was the facility

liaison for CSP.  Defendant Vigil does not provide any information about the manner in which he performs his duties or how placement recommendations are evaluated and processed, except to note that he did not personally issue the Executive Assignment Order that authorized Plaintiff's transfer to BVCF.  In addition, Defendant Vigil states that he did not have any knowledge of Plaintiff or his custody issues prior to January 30, 2008.

In response to these allegations, Plaintiff has come forward with evidence that his mother, Ms. Aranda, had a telephone conversation with Defendant Vigil on August 9, 2006, in which Plaintiff's custody issues were discussed.  Construing these facts in the light most favorable to Plaintiff, there are disputed issues of fact concerning when Defendant Vigil became aware of Plaintiff's custody issues, and what information was available to him.  Construing these facts in the light most favorable to Plaintiff, it is possible that Defendant Vigil was aware, or should have been aware, of the recommendation that Plaintiff be placed in an out-of-state facility at some point prior to, or contemporaneous with, Plaintiff's transfer to BVCF.  Although Defendant Vigil did not personally issue the Executive Assignment Order that authorized Plaintiff's transfer, it is not clear what his responsibilities were with respect to the decision to transfer Plaintiff to BVCF.  Therefore, I find that there are disputed issues of fact concerning Defendant Vigil's participation in the alleged constitutional violation.

      C.     <u>Qualified Immunity</u>

Defendant Vigil next contends that Magistrate Judge Tafoya erred in concluding that he was not entitled to qualified immunity because Plaintiff cannot establish that he

committed a constitutional violation, nor that such violation was of clearly established law.

In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known. *Harlow* places a presumption in favor of immunity of public officials acting in their individual capacities. *Schalk v. Gallemore*, 906 F.2d 491 (10th Cir. 1990). Once the defense is raised by a defendant, the burden shifts to the plaintiff to come forward with facts or allegations sufficient to show both "'that the defendant's actions violated a constitutional or statutory right'" and that the right "was clearly established at the time of the defendant's unlawful conduct." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (quoting *Albright v. Rodriguez*, 51 F.3d 15531, 1534 (10th Cir 1995)). The Supreme Court recently discarded a review process that required courts to examine these questions sequentially, first considering whether a right had been violated, and then whether that right was clearly established at the time of the alleged violation. *Pearson v. Callahan*, ___ U.S. ___, 129 S.Ct. 808, 816-22 (2009). Under *Pearson*, courts have discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

The constitutional violation at issue in this case arises from the Eighth Amendment's prohibition against cruel and unusual punishment, which encompasses

deliberate indifference by prison officials. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Prison officials have a duty to protect prisoners from violence at the hands of other prisoners, and a failure to meet this duty violates the Eighth Amendment when the conditions of the inmate's incarceration present an objective "substantial risk of serious harm," and prison officials had subjective knowledge of the risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To violate the Eighth Amendment, a prison official must have acted with "deliberate indifference." *Id*. Deliberate indifference requires than a prison official "knows of and disregards an excessive risk to inmate safety; the official must be both aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. However, prison officials may be found free from liability if they responded reasonably to the risk even if the harm ultimately was not averted. *Id*. at 844-45.

Here, Defendants do not challenge that Plaintiff has met the objective component of his Eighth Amendment claim. However, Defendant Vigil asserts that he did not act with deliberate indifference to a known risk of Plaintiff's safety because he had no knowledge of those issues. As discussed above, Defendant Vigil's knowledge of Plaintiff's custody issues is a disputed issue of fact. Construing the facts in the light most favorable to Plaintiff, Defendant Vigil knew that Plaintiff faced a known risk of harm and took no steps to reduce that harm. While Defendant Vigil may contend his actions were reasonable, that issue is impossible to address without first resolving the factual dispute as to Defendant Vigil's knowledge, or lack of knowledge, of Plaintiff's custody issues. Therefore, I find that Plaintiff has raised a factual question as to whether

Defendant Vigil violated his constitutional rights under Eighth Amendment.

Turning to whether this right was clearly established, Defendant Vigil contends that while it may be clearly established that prison officials must take reasonable measures to guarantee an inmate's safety, the existence of this standard is insufficient to put Defendant Vigil on notice that his actions violated Plaintiff's rights. As noted by the Tenth Circuit in *Howard v. Waide*, 534 F.3d 1227, 1242 (10th Cir. 2008), both the Supreme Court and the Tenth Circuit have repeatedly established an inmate's Eighth Amendment right to be protected from substantial risks of violence and assault by fellow prisoners. *See Farmer*, 511 U.S. at 833-34; *Ramos v. Lamm*, 639 F.2d 559, 572 (10th Cir. 1980). Therefore, I affirm Magistrate Judge Tafoya's conclusion that Defendant Vigil is not entitled to qualified immunity and overrule his objection.

Accordingly, for the reasons stated above, it is

ORDERED that the Recommendation of United States Magistrate Judge issued August 18, 2010 [ECF No. 164] is **AFFIRMED AND ADOPTED**. In accordance therewith, it is

ORDERED that Plaintiff's motion styled "Dispositive Motion" filed January 6, 2010 [ECF No. 114] is **DENIED**. It is

FURTHER ORDERED that Defendants' Motion for Summary Judgment, filed December 21, 2009 [ECF No. 107] is **GRANTED IN PART AND DENIED IN PART**, as set forth in the Recommendation. It is

FURTHER ORDERED that Plaintiff's Motion for Extension of Time to respond to Defendants' Objection to the Recommendation, filed September 24, 2010 [ECF No.

170] is **DENIED AS MOOT**.

Dated: September 30, 2010

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge